In re VANDERBILT ASSOCIATES, LTD., a Utah Limited Partnership, Debtor.

In re SANDAL RIDGE ASSOCIATES, Debtor.

Nos. 90–C–106A, 90–C–107A. Bankruptcy Nos. 89–B–04314, 89–B–02556.

United States District Court, D. Utah, C.D.

June 8, 1990.

Noel S. Hyde, Chris L. Schmutz, Nielsen & Senior, Salt Lake City, Utah, for debtor/appellants.

## ORDER

ALDON J. ANDERSON, Senior District Judge.

### INTRODUCTION

These cases involve an appeal of an order issued by the bankruptcy court disqualifying the law firm of Nielsen and Senior from representing both debtors in possession because of an apparent conflict of interest. 111 B.R. 347. Because the sole issue on appeal involves representation in both cases, this court previously consolidated the cases for purposes of this appeal. The court heard oral argument on April 18, 1990, after which it took the matter under advisement. Having familiarized itself

with the law and facts of this case, the court is now prepared to issue its ruling. The primary issue on appeal is whether a conflict exists sufficient to warrant disqualifying counsel from representing both debtors. For reasons stated below, the court is of the opinion that an actual conflict does not yet exist. Therefore, the bankruptcy court's order disqualifying counsel is reversed.

## BACKGROUND

Vanderbilt Associates, Ltd. ("Vanderbilt") and Sandal Ridge Associates ("Sandal Ridge") filed petitions for relief under Chapter 11 on April 26, 1989, and July 18, 1989, respectively. Both entities are limited partnerships with a common general partner, Clark Financial Corporation ("Clark Financial"). Spence Clark is also a general partner in Sandal Ridge.

The law firm of Nielsen and Senior moved pursuant to 11 U.S.C. § 327(a) for an order approving its appointment as attorney for Sandal Ridge and Vanderbilt. Attorneys for the law firm executed affidavits or verified statements as required by Bankruptcy Rule 2014(a) and section 327(a). The affidavits in each case reflected the attorney's representation of the other limited partnership as well as several other partnerships presently under the jurisdiction of the bankruptcy court. Each affidavit states that neither of the partnerships owe any obligations to or hold any adverse relationships with any of the other partnerships. Clark Financial is represented by independent counsel and not by the law firm.

Both Sandal Ridge and Vanderbilt have filed disclosure statements and plans, though at the time of the bankruptcy court's ruling disqualifying counsel neither had been approved by the court. Both plans are similar in some respects. They both propose debt service from revenue generated from the partnerships' oversecured properties and from capital contributions raised from their respective limited partners. And, most important for present purposes, both plans indicate that if the limited partners do not provide sufficient equity contributions, Clark Financial will be allowed to contribute the funding necessary for each of the plans. *See* Debtor's Plan of Reorganization at 15 (Article VIII, ¶ 8.8(a) of Vanderbilt's proposed plan).

## ANALYSIS

The starting place is with the standard of review. "Findings of fact by the bankruptcy court are not set aside unless clearly erroneous; conclusions of law are subject to *de novo* review." *In re Posta,* 866 F.2d 364, 366–67 (10th Cir.1989); *see also* Bankruptcy Rule 8013.

■ Attorney disqualification is governed by two separate sources of law. The first is the bankruptcy code itself, the second is the ethical rules that govern the conduct of lawyers appearing before this court and the bankruptcy court. *See In re Roberts,* 75 Bankr. 402, 406 (D.Utah 1987) (en banc) (noting that both ethical and bankruptcy rules are relevant to the disqualification question).

■ Attorneys practicing before the bankruptcy court are required to obtain the approval of the court before commencing representation. Although 11 U.S.C. § 327 is silent concerning the employment of counsel for the debtor in possession, section 1107(a) "places a debtor in possession in the shoes of a trustee in every way." 2 *Collier on Bankruptcy,* ¶ 327.05 at 327–55 (1990) (citing the Senate and House reports). This section, therefore, allows the debtor in possession to employ counsel, but also imposes, among other duties, an obligation on the debtor to comply with section 327.

■ Section 327(a) allows the employment of attorneys and other professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons ..." 11 U.S.C. § 327(a). Thus, for purposes of the bankruptcy code, the relevant inquiries concerning conflicts are whether the attorney represents interests adverse to the estate, and whether the attorneys are disinterested.

■ This court and the bankruptcy court have adopted the Utah Rules of Professional Conduct, which were replaced by the Utah Rules of Professional Conduct, and the Code of Professional Responsibility approved by the Judicial Conference of the United States. *See* Civil Rules of Practice of the United States District Court for the District of Utah 1(g). These rules speak of an attorney's ethical obligation to the court and, although they are not dispositive when determining· conflicts in representation in this court, they are helpful in the analysis. Concerning the present issue, these rules as a general matter prohibit conflicts of interest in representation, require loyalty and confidentiality on the part of the attorney to each client, and seek to avoid even the appearance of impropriety.

Whatever the source of the rules, the inquiry is the same: does a conflict manifest itself sufficient to prohibit representation. Some courts and commentators have argued that a potential conflict of interest may be enough to disqualify an attorney from representation. *See, e.g., In re Oliver's Stores, Inc.,* 79 B.R. 588 (Bankr. D.N.J.1987); *In re Lion Capital Group,* 44 B.R. 684 (Bankr.S.D.N.Y.1984) for a discussion of this issue. This is especially true in the bankruptcy context where the bankruptcy court seeks to protect all interests involved, including society's. Notwithstanding this argument, however, the *Roberts* court noted that when dealing with conflict problems "the court must determine that a conflict *actually* existed or, at least, the facts must strongly show the appearance of impropriety." *Roberts,* 75 B.R. at 405 (emphasis added). Furthermore, the court in that case wrote that simply because the facts identified by the bankruptcy court *may* have created a conflict of interest was not enough to warrant disqualification; an actual conflict was required. *Id.* at 406. Nevertheless, *Roberts* also recognized that a potential conflict "may justify further inquiry by the court." *Id.* at 405.

■ The bankruptcy court in this case essentially recognized two conflicts in the proposed representation. First, the court noted that each debtor is required in its disclosure statement to list the liquidation value of the assets of the estate if the estate is converted to a chapter 7. *See* 11 U.S.C. § 1129(a)(7)(A)(ii). Furthermore, the court noted that under chapter 7 the trustee may have claims against the general partner if the general partner is personally liable. *See* 11 U.S.C. § 723(a). The court thus determined that since both estates are insolvent they may both assert a claim against Clark Financial. The court found a conflict to exist because assertion of a claim against Clark Financial by one debtor would "reduce the assets of Clark Financial which are available to service the remaining debtor in a like manner." Memorandum Decision at 17.

This legal conclusion is incorrect in this court's judgment, however. Section 103(b) of title 11 states that "Subchapters I and II of chapter 7 of this title apply *only* in a case under · such chapter." 11 U.S.C. § 103(b) (emphasis added). In other words, those subchapters apply only in a chapter 7 case. Section 723, the section relied on by the bankruptcy court for the apparent conflict, is in subchapter II and thus applies only to chapter 7 cases. *See In re Kaveney,* 60 B.R. 34 (Bankr. 9th Cir.1985); *In re Monetary Group,* 55 B.R. 297 (Bankr. M.D.Fla.1985). Because the present cases seek relief under chapter 11, no conflict exists.

Furthermore, even if section 723 did apply here, by its own terms several contingencies would have to occur before a conflict would exist. Thus, by definition the conflict is potential, not actual. First, and most important, the section only applies if the general partner is personally liable and the bankruptcy court made no finding concerning this fact. Second, the bankruptcy court presumed that Clark Financial would not have sufficient resources to satisfy both debtors' obligations. If Clark Financial does have adequate resources and is willing to satisfy both debtors' obligations, no conflict would exist.

■ The second conflict apparently recognized by the bankruptcy court is related to the first. During the bankruptcy hearing on this matter, the bankruptcy judge

expressed her belief that a conflict manifested itself in each debtor's plan of reorganization. As noted above, that plan called for equity contributions by the limited partners of each entity, and if that was not sufficient the general partner would make up the difference. The bankruptcy court held that if the general partner paid money to one estate the other would be prejudiced because the amount of money available to the other would be depleted. The court believed that this fact, in conjunction with the same law firm representing both debtors, constituted a conflict in representation because the law firm could not provide the requisite loyalty and dedication to each client, when to do so might compromise the other.

Although each plan does call for this contingency, it is a contingency, thus giving rise to a potential conflict, not an actual one. While a potential conflict could perhaps form a basis for disqualification of counsel, this case is not the appropriate vehicle to expand the reach of *Roberts*. As noted above, if Clark Financial has adequate resources and is willing to satisfy the debtors' obligations, no conflict exists. To establish this fact, the bankruptcy court could, for example, hold a hearing and determine Clark Financial's willingness and ability to satisfy the debtors' obligations.

Moreover, even after approval of the plan, the bankruptcy court retains jurisdiction over certain matters. *See, e.g.*, 11 U.S.C. § 1142(b) (allowing the bankruptcy court to require a party to perform "any other act ... that is necessary for the consummation of the plan."); *see also In re Terracor*, 86 B.R. 671, 675–76 (D.Utah 1988). In this capacity, the court could require that the plan of reorganization contain a date certain regarding when the cash call to the limited partners would be considered ineffectual and also require that before the general partner is asked for contribution that counsel notify the court. At that time a conflict may in fact exist sufficient to warrant separate representa-

tion of each limited partnership. In the interim, however, given the fact that the general partner may never have to contribute any resources, no actual conflict exists and the law firm may represent both limited partnerships. This result, in fact, may be cost-efficient to the debtors and consequently beneficial to the creditors because of the similarity of the entities and the plans.

In conclusion, the court holds that no conflict of interest exists sufficient to warrant separate representation of each limited partnership.[1] The order of the bankruptcy court disqualifying Nielsen and Senior from representing both Sandal Ridge and Vanderbilt is hereby reversed and the bankruptcy court is instructed to proceed in a manner consistent with this order. Nothing in this order, however, should be construed to prohibit the bankruptcy court from continuing to assure conflict-free representation in these cases, including, if necessary, hearings on the matter should any of the contingencies mentioned above occur.

IT IS SO ORDERED.

---

1. The bankruptcy court also expressed concern with the notice given by counsel regarding the hearing on the matter of representation. Because this court reaches a different legal conclusion on the ultimate issue, the notice issue is not material here. However, if another hearing is necessary in the future, the bankruptcy court can of course insist that adequate notice be given.