**In re MIDDLETON ARMS, LIMITED PARTNERSHIP, Haystack, Limited, Maple Canyon, L.P., Cinnamon Ridge, L.P., Debtors.**

**E. Franklin CHILDRESS, Jr., United States Trustee, Region VIII, Appellant,**

v.

**MIDDLETON ARMS, LIMITED PARTNERSHIP, Haystack, Limited, Maple Canyon, L.P., Cinnamon Ridge, L.P., Appellees.**

**Nos. 3:90–0343 to 3:90–0346.**

United States District Court, M.D. Tennessee, Nashville Division.

Sept. 25, 1990.

Beth Roberts Derrick, Nashville, Tenn., for appellant.

James R. Kelley, Dearborn & Ewing, Nashville, Tenn., for appellees.

## MEMORANDUM

WISEMAN, Chief Judge.

This cause of action is before this Court on the April 12, 1990 Motion by the United States Trustee for Region VIII For Leave To Appeal Order On Consolidated Hearing On Applications For Authority To Employ Real Estate Agent. For the following reasons, this Court grants the Motion For Leave To Appeal and reverses the Order On Consolidated Hearing On Applications For Authority To Employ Real Estate Agent issued by the United States Bankruptcy Court For The Middle District of Tennessee on April 2, 1990.

As the January 30, 1990 hearings on the four Debtors' Applications for Authority to Employ Real Estate Agent were consolidated, as the Bankruptcy Court's Order does not distinguish among the cases, and as the relevant facts in each of the cases are not in dispute and are essentially identical, this Court hereby orders the four actions consolidated pursuant to Federal Rule of Civil Procedure 42(a). Consequently, in accordance with Bankr.Rule 8013, the Bankruptcy Court's Order is reversed as to all four Debtors and remanded to the Bankruptcy Court with the instruction that the Bankruptcy Court deny the request to employ Jacques–Miller as real estate agent.

### I.

The current dispute arose from each Debtor's Application seeking the approval

of the Bankruptcy Court concerning the employment of Jacques–Miller, Inc. ("Jacques–Miller") as real estate agent for the sale of certain apartment projects owned by the Debtors. At the January 30, 1990 hearing on the Debtors' Applications for approval of the employment of Jacques Miller as real estate agent, each of the Debtors stipulated that the company is not a "disinterested person" as defined in 11 U.S.C. § 101(13).[1] The Bankruptcy Court, in its Order granting the Debtors' Applications, initially agreed with the U.S. Trustee that 11 U.S.C. § 327(a)[2] does not permit the employment of Jacques Miller as real estate agent because of its interestedness. However, the court, referring to 11 U.S.C. § 105(a)[3], concluded that it was within its equitable powers to authorize the employment provided that the parties agreed on its stated conditions—that Jacques–Miller's maximum commission of 3 percent would be inclusive of expenses incurred in connection with the respective sale; that no Debtor would seek on behalf of Jacques–Miller any applicable commission pursuant to 11 U.S.C. § 506(c) without the affected secured creditor's consent; and that Jacques–Miller would not be the exclusive listing agent for each Debtor's property.

Pursuant to 28 U.S.C. § 158(a), the U.S. Trustee filed a motion for leave to appeal the Order of the Bankruptcy Court authorizing the employment of Jacques–Miller.

1. 11 U.S.C. § 101(13) provides the following: "disinterested person" means person that—
   (A) is not a creditor, an equity security holder, or an insider;
   (B) is not and was not an investment banker for any outstanding security of the debtor;
   (C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;
   (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; and
   (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor or an investment banker specified in

## II.

There are two questions presently before this Court. First, as a threshold procedural matter, this Court must decide whether leave to appeal should be granted. Second, this Court must decide whether the Bankruptcy Court erred as a matter of law in using its § 105(a) powers to contravene the express language of 11 U.S.C. § 327(a). For the reasons set forth below, this Court concludes that the U.S. Trustee has leave to appeal the Order of the Bankruptcy Court and that the Bankruptcy Court erred in authorizing the employment of Jacques–Miller, an "interested" professional.

## A.

██ United States district courts must hear appeals from final judgments, orders and decrees of the bankruptcy courts according to 28 U.S.C. § 158(a), and they have discretion whether to hear interlocutory orders and decrees of the bankruptcy courts. The U.S. Trustee argues that the Bankruptcy Court's Order authorizing employment of Jacques–Miller is a final order or, in the alternative, meets the requirements of the district court in granting leave to appeal interlocutory orders.

Although the April 2, 1990 Order meets the requirements for immediate appeal of an interlocutory order,[4] this Court finds the

subparagraph (B) or (C) of this paragraph, or for any other reason;

2. 11 U.S.C. § 327(a) provides the following:
   (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title [11 U.S.C. §§ 101 et seq.].

3. 11 U.S.C. § 105(a) provides the following:
   (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [11 U.S.C. §§ 101 et seq.].

4. The requirements for interlocutory appeals in the Sixth Circuit are that:
   (1) The question involved must be one of "law";

Order at issue may be treated as a final order under Sixth Circuit precedent and, therefore, grants the U.S. Trustee's motion for leave to appeal. In *In re Vause*, 886 F.2d 794 (6th Cir.1989) the Sixth Circuit qualified the district court's determination that an order is final if it "conclusively determines a separable dispute over a creditor's claim," by explaining that "[t]he mere fact that a dispute is 'separable' does not make it a final appealable order." *Id.* at 797. However, in finding that the order at issue was final, the court heavily relied on the United States Supreme Court's "*Gillespie* doctrine":

> In certain close cases where finality cannot be conclusively resolved, the "danger of denying justice by delay" outweighs "the inconvenience and costs of piecemeal review," particularly when the questions on appeal are "fundamental to the further outcome of the case."

*Vause*, 886 F.2d at 798 (quoting *Gillespie v. U.S. Steel Corp.*, 379 U.S. 148, 152–54, 85 S.Ct. 308, 310–12, 13 L.Ed.2d 199 (1964)).

In this appeal the disputed question is whether the Bankruptcy Court was correct in approving Jacques–Miller as real estate agent for the Debtors. This Court views the employment issue as separable from the overall Chapter 11 proceeding but, more importantly, also finds the employment question "fundamental to the further outcome of the case" under the *Gillespie* doctrine. The U.S. Trustee points out that the immediate resolution of the employment of Jacques–Miller will materially advance the ultimate termination of the bankruptcy cases, in that if this Court does not rule now on the issue, the Trustee inevitably will appeal any orders allowing the proposed sales in each Debtor's case, and such appeals might be filed individually if the sales occur at different times. *See*

(2) it must be "controlling";
(3) there must be substantial ground for "difference of opinion" about it; and
(4) an immediate appeal must "materially advance the ultimate termination of the litigation."
*Cardwell v. Chesapeake & Ohio Railway Co.*, 504 F.2d 444 (6th Cir.1974).

Trustee's Memorandum of Law in Support of Motion For Leave to Appeal. As this Court seeks to prevent the denial of justice by delay, it is appropriate to view the Order as final and resolve the propriety of authorizing the employment of an interested professional on this appeal.

This interpretation is supported by the Sixth Circuit's decision in *Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir. 1988), *cert. denied, Bauer v. Waldschmidt,* — U.S. ——, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989), in which the court applied the "collateral order" doctrine announced in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). To qualify as a collateral order, and thus be entitled to immediate appeal, a decision must:

> (i) 'conclusively determine the disputed question';
>
> (ii) 'resolve an important issue completely separate from the merits of the action'; and
>
> (iii) 'be effectively unreviewable on appeal from a final judgment.'

*Bauer*, 859 F.2d at 440 (citations omitted). The Order on appeal to this Court meets all three tests. First, the Order conclusively determined the issue of Jacques–Miller's employment. Second, the question of employing an interested professional in a bankruptcy proceeding is an important issue completely separate from the merits of the case. Finally, although the *Bauer* court found the third element lacking because the "separate" question presented was not "important enough to justify consideration in [a] separate interlocutory appeal ...", and "border[ed] on the frivolous," this Court views the question of authorizing the employment of an interested professional as important and certainly far from the "border" of frivolity.[5] Conse-

5.   *See also F/S Airlease II v. Simon*, 844 F.2d 99, 103–04 (3d Cir.1988), *cert. denied*, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (bankruptcy and district court orders approving *nunc pro tunc* employment of professional broker were final orders because of the impact of the orders on the assets of the bankruptcy estate, the preclusive effect of a decision on the merits, and the furtherance of judicial economy).

quently, this Court treats the Order of the Bankruptcy Court as a final order subject to immediate appeal.

## B.

■ The substantive issue before this Court is whether the Bankruptcy Court properly invoked the equity powers provided in 11 U.S.C. § 105(a) to allow the employment of an interested professional in contravention of 11 U.S.C. § 327(a). Because this Court is convinced the Bankruptcy Court erred, the Order granting each Debtor authority to employ Jacques–Miller is reversed.

Section 327(a) of Title 11, United States Code, unequivocally states that in order for a professional to be employed in a bankruptcy case, the professional must hold or represent no interest adverse to the estate and the professional must be a "disinterested person" as defined in 11 U.S.C. § 101(13). At the January 30, 1990 hearing on the Debtors' request for approval to employ Jacques–Miller, each of the Debtors stipulated that Jacques–Miller is not a "disinterested person" as defined in § 101(13).

In its April 2, 1990 Order authorizing the requested employment, the Bankruptcy Court "initially agree[d]" with the U.S. Trustee's position that § 327(a) does not authorize the appointment of Jacques–Miller as real estate agent because of the parties' stipulation that Jacques–Miller is not a "disinterested person." However, in its next breath, the court claimed that § 105 empowered it to authorize the appointment of a person who is "not disinterested," if the evidence "clearly and convincingly establishes that the Debtor, the creditors and the equity security holders would benefit from such employment and, if the employment was not approved, those same parties would be adversely affected." *See* Bankruptcy Court's Findings of Fact and Conclusions of Law, p. 3. Reasoning that the employment of Jacques–Miller would be beneficial to all creditors and equity security holders, likely would result in a quicker sale of the property of each Debtor, and would cost each Debtor less, the court granted each Debtor's Application for

Authority to Employ Jacques–Miller. *See id.* at 2.

Section 105(a) of Title 11, United States Code, provides in pertinent part:

The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title.

Although this provision undoubtedly provides bankruptcy courts with wide equitable latitude, the Bankruptcy Court overextended its exercise of equity jurisdiction. The provision itself expressly limits the use of equitable relief to applications which *"carry out the provisions of this title"* (emphasis added). One of the provisions of Title 11 is § 327(a) which explicitly states that the bankruptcy courts only can authorize the employment of *disinterested* professionals.

The Sixth Circuit has stated that bankruptcy courts "cannot use equitable principles to disregard unambiguous statutory language." *In re C–L Cartage Co., Inc.,* 899 F.2d 1490 (6th Cir.1990). The United States Supreme Court has also explained that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169, 179 (1988).

*See also United States v. Sutton,* 786 F.2d 1305, 1308 (5th Cir.1986) ("While the bankruptcy courts have fashioned relief under Section 105(a) in a variety of situations, the powers granted by that statute may be exercised only in a manner consistent with the provisions of the Bankruptcy Code. That statute does not authorize the bankruptcy courts to ... constitute a roving commission to do equity."); *In re Glenn,* 760 F.2d 1428, 1441 (6th Cir.), *cert. denied, Miller v. First Federal of Michigan,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985) (provision of Bankruptcy Code governing bankruptcy court's general equitable powers, § 105(a), does not empower bankruptcy court to issue stay orders tolling statutory redemption period); *Johnson v. First Nat. Bank of Montevideo, Minn.,*

719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) ("Although a bankruptcy court is essentially a court of equity, [citation omitted] its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code."); *In re Pirsig Farms, Inc.*, 46 B.R. 237, 240 (D.Minn.1985) (though bankruptcy courts have the authority to take steps not specifically authorized by the bankruptcy laws by virtue of § 105(a), that provision does not give the courts the authority to contravene specific provisions of the Bankruptcy Code); *In re French*, 111 B.R. 391 (Bankr.N.D.N.Y.1989) (Section 105(a) cannot be utilized to circumvent requirement in § 327(e) that attorney seek appointment from Court in order to be granted compensation).

This Court is aware of the decision in *Matter of PHM Credit Corp.*, 110 B.R. 284 (E.D.Mich.1990), in which the court affirmed the decision of the bankruptcy judge, who appointed a previously "interested" law firm as counsel for the debtor in possession subject to curative measures which, in the court's eyes, made the firm "disinterested." The court cited § 105(a) as giving the bankruptcy judge the authority to adopt curative measures. However, the key distinction between *PHM Credit* and the present appeal is that the *PHM Credit* court construed the curative measures as "adequately [meeting] the concerns of the disinterest requirements." *Id.* at 287. In contrast, the Debtors in the present appeal have stipulated that Jacques–Miller is *interested.* The conditions imposed on the appointment of Jacques–Miller (maximum 3% commission, no exclusive listing agency, etc.) did not cure the interested status of Jacques–Miller.

The purpose behind the disinterested person requirement is to identify persons who exhibit a risk of acting in a manner calculated to maximize their own interests at the expense of the best interests of the estate. *See Matter of Federated Dept. Stores, Inc.*, 114 B.R. 501, 504 (Bankr.S.D.Ohio 1990). Thus, although the "equities" may weigh heavily in favor of allowing the employment of Jacques–Miller, the Bankruptcy Court erred in disregarding the explicit command of § 327(a). This Court agrees with the Southern District of Ohio Bankruptcy Court that the policy behind the specific language in § 327(a) must be upheld:

> This Court must be ever mindful that the stringent requirements and standards for employment of professionals under the Bankruptcy Code and Rules are designed to insure the integrity of the bankruptcy process, and the public confidence in the bankruptcy courts.

*In re Lee Way Holding Co.*, 100 B.R. 950, 961 (Bankr.S.D.Ohio 1989).

### III.

For the foregoing reasons, this Court holds that the Bankruptcy Court erred in granting the Debtors' Applications For Authority To Employ Real Estate Agent. This cause of action is hereby reversed and remanded with the instruction to the Bankruptcy Court that each Debtor's request for approval of Jacques–Miller as real estate agent be denied.