**In re TMA ASSOCIATES, LTD., a Colorado limited partnership, Debtor.**

**Bankruptcy No. 91–16493–SBB.**

United States Bankruptcy Court, D. Colorado.

July 28, 1991.

Paul D. Rubner, Rubner & Kutner, P.C., Denver, Colo., Proposed Attys., for debtor.

Leo Weiss, Denver, Colo., for U.S. Trustee.

## MEMORANDUM OPINION
## AND ORDER

SIDNEY B. BROOKS, Bankruptcy Judge.

THIS MATTER comes before the Court on Debtor's Application to Employ Attorneys ("Application"), with Affidavit of Paul D. Rubner attached ("B.R. 2014 Affidavit"), and Notice Pursuant to Rule 23 of Application to Employ Attorneys, filed May 14, 1991. The Court held a *sua sponte* hearing regarding this matter and took the matter under advisement.

The Chapter 11 Debtor, a limited partnership, seeks to employ counsel who has various connections with Debtor's general partners and other persons related to the partnership. The primary question before the Court: Can a Chapter 11 partnership/debtor, pursuant to 11 U.S.C. § 327, employ counsel who also represents general partners of the partnership?

The Court, having held a hearing, reviewed the file, and being advised in the premises, makes the following findings of fact and conclusions of law.

### I. *Factual Background.*

Debtor filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code on May 14, 1991. By way of the present Application, Debtor seeks to employ Rubner & Kutner, P.C. ("Counsel" or "the Firm").

Debtor is a Colorado limited partnership formed in July 1985 to develop and sell certain real estate located in Adams County, Colorado and commonly known as the Thornton Market Place ("Debtor" or "Partnership"). On Debtor's Schedules, the real estate is assigned a market value of $2,465,000.00 and is the sole asset of the Partnership.

The Partnership is comprised of three general partners and one limited partner, each holding a 25% interest. The names of the partners are as follows:

1. Lawrence E. Hamilton, managing administrative general partner;
2. Hugh J. McClearn, general partner;
3. Reid L. Rosenthal, administrative general partner; and
4. Bruce D. Benson, limited partner.

Counsel submits that the Firm has, at various times, represented each of the three general partners of Debtor and continues to represent two of the three general partners, Mr. McClearn and Mr. Rosenthal.[1] The Firm previously represented Mr. Hamilton in regard to certain unrelated real estate owned by him in which Van Schaack was a tenant. In Counsel's words, a "very, very minor matter" involving approximately 15 to 20 minutes of advice. The Firm does not continue to represent Mr. Hamilton.

The Firm does, however, continue to represent both Mr. McClearn and Mr. Rosenthal in regard to certain distressed real estate developments with which they are financially involved and/or personal financial matters. It is alleged that the Firm has not rendered advice to either Mr. McClearn or Mr. Rosenthal, as individuals, regarding their interest in the Debtor. Counsel generally characterizes the services as "consultation for developers in financial distress."

Each of the three general partners of Debtor are co-makers on a promissory note ("the Note") payable to the Debtor's limited partner, which Note was the source of the general partners' equity contributions to the limited Partnership. The Note is in default.

Counsel has, thus far, been paid for its representation in Debtor's Chapter 11 case by way of a retainer remitted to the Firm by Hamilton Properties Corporation ("Hamilton Properties"). Debtor's managing administrative general partner, Mr. Hamilton, is the President, Treasurer, and a Director of Hamilton Properties. Hamilton Properties is listed in Debtor's Schedules as being owed $957.00 for 1991 management fees.[2]

---

1. The limited partner, Mr. Benson, has never been a client of the Firm.

2. Another entity, identified only as "Pinnacle Associates c/o Hamilton Properties Corporation," is listed as holding a $180.00 unsecured

The pleadings reveal that Hamilton Properties may, at some future time, seek "reimbursement" of the retainer from Debtor. Further, Hamilton Properties has, it is represented, handled most, if not all, of Debtor's financial transactions "through the escrow account of Hamilton Properties Corporation." *See,* Statement of Financial Affairs for Debtor Engaged in Business, ¶ 7.a. and ¶ 21.a., and Schedule A–3.

## II. *Discussion.*

■■■ The issue of Counsel's employment is before the Court *sua sponte.* Although no creditors or other parties-in-interest have objected,[3] the Court has the independent obligation to review the subject Application even absent objection.[4] The most appropriate time for such review is as soon as possible after the Application is filed, not when a request for fees is subsequently made. "In order to avoid the denial of fees after considerable time and effort has been expended by counsel and significant benefit derived by the clients, this issue should be addressed upon the filing of the initial application for employment pursuant to § 327." *In re Roberts,* 75 B.R. 402, 406 (D.Utah 1987). *See also, In re Vanderbilt Associates, Ltd.,* 111 B.R. 347, 353 (Bankr.D.Utah 1990) *rev'd on other grounds,* 117 B.R. 678 (D.Utah 1990)[5] ("Even though no party in interest has objected, it is incumbent upon the court to make an independent determination if appointment is appropriate. [Footnote omit-

ted.] The mere absence of objection is certainly not controlling, especially as in this case, if those affected have not received notice."); *In re Ochoa,* 74 B.R. 191, 194 (Bankr.N.D.N.Y.1987) ("Even absent creditor objection, (assuming full disclosure of the facts), the Court is not prohibited from sua sponte inquiry into an apparent conflict of interest.").

■■■ A. *The applicable test.* An analysis of the issue of employment of bankruptcy counsel must begin with the premise that debtors should be free to select counsel of their choice. However, "[t]his general principal is tempered by ethical restraints placed upon attorneys by the Rules and the Code. It is also modified and controlled by statutory restrictions contained in the Bankruptcy Code which prohibit the attorney from representing an interest materially adverse to the estate." *Vanderbilt Associates, supra* at 351.

Employment of attorneys for a debtor is governed, generally, by 11 U.S.C. § 327(a), B.R. 2014, and applicable case law. *See, generally, In re WVS, Investment Joint Venture & Tri–Crown Corp.,* 1990 WL 191864 (D.Colo.1990); *In re Ginco, Inc.,* 105 B.R. 620 (D.Colo.1988); *In re Western Office Partners, Ltd.,* 105 B.R. 631 (Bankr. D.Colo.1989); *In re Sixth Avenue Car Care Center,* 81 B.R. 628 (Bankr.D.Colo. 1988).

Section 327(a) "states a two prong test for the employment of attorneys. First,

claim against Debtor for a "partnership equity loan in 1986." What kind of connection, if any, that exists between Pinnacle Associates and/or Hamilton Properties and/or Mr. Hamilton cannot be determined by the Court.

3. Although no formal written objection was lodged on behalf of the U.S. Trustee, counsel therefor stated to the Court that the decision to not object was the product of carefully considered judgment, but not without a fair amount of "hesitation" and "discomfort."

4. Further, as will be addressed *infra,* there is a serious question as to the adequacy of the notice given to interested parties.

5. This case was subsequently reversed by the District Court of Utah on the basis of a distinction drawn by some courts between potential

and actual conflicts of interest. *In re Vanderbilt Associates, Ltd.,* 117 B.R. 678 (D.Utah 1990). The district court was careful to note that "[n]othing in this order, however, should be construed to prohibit the bankruptcy court from continuing to assure conflict-free representation in these cases, including, if necessary, hearings on the matter should any of the contingencies mentioned above occur." *Id.,* at 682. In this District, however, there is no distinction drawn between potential and actual conflicts. *See, In re Ginco, Inc.,* 105 B.R. 620, 622 (D.Colo.1988); *In re Amdura Corp.,* 121 B.R. 862, 868 (Bankr. D.Colo.1990). *Accord, In re Kendavis Industries Int'l, Inc.,* 91 B.R. 742, 744 (Bankr.N.D.Tex.1988) (the court attempts to demonstrate "that a 'potential' conflict is a contradiction in terms."). *Contra, In re Waterfall Village of Atlanta, Ltd.,* 103 B.R. 340, 345 (Bankr.N.D.Ga.1989) (cases cited).

the attorney for the Debtor must hold no adverse interest to the bankruptcy estate. Second, the attorney must be a disinterested person." *In re Kendavis Industries Int'l, Inc.,* 91 B.R. 742, 748 (Bankr. N.D.Tex.1988). *Accord, Sixth Avenue Car Care Center, supra* at 630; *Roger J. Au & Son, Inc. v. Aetna Insurance Co.,* 64 B.R. 600, 604 (N.D.Ohio 1986).

> The standards for disinterestedness are to be rigidly applied. [Citation omitted.] The standard is a strict one, broad enough to include anyone who in the slightest degree might have some interest or relationship that would color the independent and impartial attitude required by the Code.
>
> *WVS, Investment Joint Venture, supra* at 2 (cases cited).

*Accord, Ginco, supra* at 621–622; *In re Lee,* 94 B.R. 172, 177 (Bankr.C.D.Cal.1988); *In re Philadelphia Athletic Club, Inc.,* 20 B.R. 328, 333 (E.D.Pa.1982) (debtor's attorneys must be " 'divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.' ") (quoting *In re Realty Associates Securities Corp.,* 56 F.Supp. 1007, 1007 (E.D.N.Y.1944)).[6]

B. *The continuing representation.* A case that is instructive and generally applicable to the within case is *In re Neidig Corp.,* 113 B.R. 696 (D.Colo.1990). In that case, Judge Kane upheld the Bankruptcy Court's disqualification of debtor's counsel after counsel had previously been employed pursuant to 11 U.S.C. § 327. The debtor's counsel was disqualified from employment under 11 U.S.C. § 327, due to conflicts of interest. In *Neidig Corp.,* counsel had, prior to the debtor corporation's bankruptcy, represented the debtor's principal shareholder and president with respect to personal, unrelated matters as well as "matters directly impacting the assets available to the bankruptcy estate." *Id.* at 699. Moreover, debtor's counsel **continued** to . represent the debtor's president in personal matters during the pendency of the corporate debtor's Chapter 11 case. Debtor's counsel had also represented, pre-petition, the mother of the debtor's principal shareholder and president.

Similarly, Counsel in the matter *sub judice* has previously represented each of the three general partners in matters involving their personal financial matters, as well as with respect to various real estate ventures similar to the one at issue, and **continues** to represent two of the general partners in this capacity.

The three general partners are individually liable for Partnership debts and obligations and they are, therefore, (1) contingent obligors of the Partnership/Debtor, and (2) parties with claims, probably contingent claims, against one another with rights of contribution and/or indemnification. *See,* 11 U.S.C. § 723, Rights of Partnership Trustee Against General Partners. Additionally, the partners may have various rights of contribution by and among them arising from the Note. Without additional or more complete information, the Court must infer and conclude that (1) the three general partners each have liability to the limited partner, (2) each of the three general partners, as well, have claims, per-

---

**6.** Counsel cites this Court to *Matter of PHM Credit Corp.,* 110 B.R. 284 (E.D.Mich.1990) as standing for the proposition that courts should not adhere to a "hypertechnical position which ignore[s] the case's fundamental economic realities ... [but should] carefully balance[ ] the interests of all concerned." *Id.* at 287. The court in *PHM* was faced with a very unusual fact situation. The prospective attorneys were heavily involved in the pre-petition design of the corporation's financial structure and, therefore, had an unequalled familiarity with the debtor. Additionally, the court was addressing the problem post-confirmation of a plan which provided a 100% payout to creditors. In such a situation, the court issued "curative" orders which were not specifically authorized by the Bankruptcy Code. In fact, the orders were in direct conflict with Section 327. This Court declines to follow *PHM. Accord, In re Middleton Arms, Limited Partnership,* 119 B.R. 131, 135 (M.D.Tenn.1990) *aff'd,* 934 F.2d 723 (6th Cir.1991) (rejects *PHM* in favor of upholding "the policy behind the specific language in § 327(a)."). *See, generally, Amdura, supra* at 866 ("what may be acceptable in a commercial setting, where all of the entities are solvent and creditors are being paid, is not acceptable when those entities are insolvent and there are concerns about intercompany transfers and the preference of one entity and its creditors at, perhaps, the expense of another.").

haps contingent claims, between and among themselves based upon the Note, and (3) the Note is in default; the partners' claims and obligations are ripe.

In an attempt to ameliorate the numerous potential conflicts, Counsel indicates in his B.R. 2014 Affidavit that his Firm "will not represent the general partners in regard to claims that may be made by and among the general partners." This assurance is largely vitiated by Counsel's express intent to take on an expanded role in its continuing representation of the two general partners should the need arise. At the *sua sponte* hearing on the employment issue, Counsel volunteered, "if in the worst of all possible worlds our firm would have to file a bankruptcy for one of these individuals, we would have to list the [general partner's equity] obligation [to the limited partner], but I don't really count that as representation of them in regard to a claim." These candid remarks reflect Counsel's ill-defined sense of the entangled relationships and numerous conflicts, actual and/or potential, and the Firm's readiness to simply overlook or ignore the problems and pervasive appearances of impropriety with which this Court is bound to deal head on. *See, WVS, Investment Joint Venture, supra* at 2 ("Section 327 is intended to address the appearance of impropriety as much as its substance, to remove the temptation and opportunity to do less than duty demands. [Citation omitted.] It is intended to prevent even the appearance of conflict, irrespective of the integrity of the person or firm under consideration."); *Sixth Avenue Car Care Center, supra* at 630 (an appearance of impropriety may undermine the public's confidence in the fairness of bankruptcy proceedings). *See, generally, In re Martin,* 817 F.2d 175, 181 (1st Cir.1987) (cases cited).

Other courts have recognized the perilous aspects of representing both a debtor/partnership and individual general partners.

It is often the management of the general partner which may have contributed to the negative financial circumstances of the debtor. There is an **inherent tension** in the relationship between a non-debtor general partner and a debtor limited partnership.

*Vanderbilt Associates,* 111 B.R. at 356 (emphasis added).

An attorney is at peril when simultaneously representing a partnership and its general partner. The attorney will always be suspect in the eyes of creditors and limited partners as sometimes subordinating the interests of the partnership to benefit the general partner. In my view, an attorney should never place himself or herself in that position. An attorney who does is just asking for trouble.

*In re D.L. Enterprises,* 89 B.R. 107, 110–111 (Bankr.C.D.Cal.1988).

*See also, In re W.F. Development Corp.,* 905 F.2d 883, 884 (5th Cir.1990) cert. denied *sub nom W.F. Development Corp. v. Office of the U.S. Trustee,* —— U.S. ——, 111 S.Ct. 1311, 113 L.Ed.2d 245 (1991) ("When one attorney represents both limited and general partners in bankruptcy, there will always be a potential for conflict, and disqualification is proper."); *In re Grabill Corp.,* 113 B.R. 966, 970 (Bankr.N.D.Ill. 1990) ("Counsel for a Chapter 11 debtor owes a fiduciary duty to the ... partnership as an entity, and represents its interests, not those of its principals."); *In re Kuykendahl Place Associates, Ltd.,* 112 B.R. 847, 850 (Bankr.S.D.Tex.1989) ("The duty and loyalty of the attorney is to the debtor and not to the partners or individuals that control the partners of the Debtor.").

■ Counsel argues that it has obtained written waivers of any conflict from the general partners. Given the nature of the facts before this Court, these waivers are insufficient. *Accord, Matter of King Resources Co.,* 20 B.R. 191, 204 (D.Colo.1982) ("There are certain factual situations where the conflicts of interests between parties are so critically adverse to one another so as not to permit the representation of multiple parties by an attorney, even with the consent of all parties made after full disclosure.") (cases cited).

If the people who actually make the decision to consent are the same individuals whose interests are in conflict, that consent is suspect ... it is problematical that effective consent could be given by the limited partnership. Such consent would of necessity be given by the general partner.... This situation creates a circumstance much like the fox in the hen house.

*Vanderbilt Associates, supra* at 352, 358.

*See, generally, Matter of Head*, 110 B.R. 621, 625 (Bankr.M.D.Ga.1990) ("Because the benefits of the rule extend to the public at large, a party to litigation cannot waive its violation.").

C. *The retainer.* Even beyond the matter of the Firm's continuing representation of two of the general partners is the issue of the pre-petition retainer. The retainer was paid by an entity which is not only a scheduled creditor but is also controlled by Debtor's managing administrative general partner. The potential for a conflict of interest in this situation is substantial.

Another court was faced with a very similar situation. An attorney, while purporting to serve as attorney for a debtor, received compensation for services rendered to the debtor from a corporation controlled by a general partner of the debtor and an apparent owner of a creditor of the debtor. *In re 765 Associates*, 14 B.R. 449 (Bankr.D.Hawaii 1981).

While the interest of a general partnership and the interest of its general partners often overlap, the interest of the partnership may also conflict with the interest of its general partners. Thus, an attorney representing a general partnership should not render advice to the general partners nor receive compensation from a corporation controlled by a general partner.... An attorney representing a debtor should not receive compensation from any of the creditors, directly or indirectly.... This place[s] Applicant in a vulnerable situation.

*Id.* at 451.

*Accord, In re Huntmar Beaumeade I Limited Partnership*, 127 B.R. 363, 365 (Bankr.E.D.Va.1991) ("by receiving payment of its fees from a creditor of the debtors, [the attorney] is not 'disinterested.'") (cases cited).

■ D. *The notice.* This Court believes that "[m]eaningful disclosure is the key to proper employment of professionals and, not incidentally, to more fully and fairly protecting all claims and interests of third parties ... requiring notice and full disclosure better insures the integrity of the bankruptcy system." *Western Office Partners, supra* at 637. *See also, King Resources, supra* at 201 (duty to divulge conflicts); *Sixth Avenue Car Care Center, supra* at 631 (obligation runs not only to the client but also to the court); *Roberts, supra* at 410 (the court has no duty to search the file to determine for itself that a prospective attorney is not involved in conflicts of interest; it is the attorney's duty to so inform the court) (cases cited). *Accord, In re Hathaway Ranch Partnership*, 116 B.R. 208, 219 (Bankr.C.D.Cal.1990).

In addition to the problems that this Court has identified heretofore, Counsel's Rule 23 Notice submitted to creditors in conjunction with the Application did not disclose (1) Counsel's continued representation during the course of Debtor's Chapter 11 case of two of the general partners of Debtor, (2) the existence of the general partner's liability, as co-makers, on the note payable to the limited partner and possible related "rights of contribution by and among them," and (3) payment of a retainer by a corporation which is a creditor of Debtor and one affiliated with, if not substantially or wholly owned by, the third general partner of Debtor and which may ultimately seek reimbursement of the retainer from Debtor, itself.[7] These are not insignificant, innocuous omissions with no bearing on the issue of employment.

---

**7.** The Rule 23 Notice revealed that the Firm "has represented the general partners of TMA Associates, Ltd. and received a retainer from Hamilton Properties Corporation in the amount of $12,619.00 in connection with the proceedings."

III. *Conclusion.*

This Court agrees that it would be unreasonable and inappropriate, as argued by Counsel, to apply a "bright line" test to every similar factual situation that comes before it. *Accord, In re Amdura Corp.,* 121 B.R. 862, 871 (Bankr.D.Colo.1990). This Court is not, here, endorsing or adopting a bright-line test—or a "per se rule"—that says a Chapter 11 partnership/debtor's attorney cannot, under any circumstances or at any time, also represent one or more related persons or entities. Each case must be considered on its merits.

In this particular case, however, the totality of the circumstances, and not any single factor, compels this Court to conclude that Counsel cannot be employed by this Partnership/Debtor pursuant to Section 327(a). Counsel does not qualify; the Firm "holds or represents an interest adverse to the estate" and appears not "disinterested," as well. It is the combination of factors present in the case, particularly that (1) Counsel continues to represent two of the three general partners of the Debtor, (2) there is substantial contingent, if not actual, liability of the two general partners still being represented by Counsel to (a) Debtor's sole limited partner, (b) the Debtor/Partnership, and (c) the third general partner and to each other under rights of contribution and/or indemnification, and (3) Counsel was paid a pre-petition retainer by an entity which is both a creditor and controlled by a general partner of Debtor, which makes this Court's conclusion as to disinterestedness almost inescapable. Under the dictate of *Ginco* and the reasoned guidance of *Amdura*, this Court has no choice but to disqualify Counsel from employment pursuant to 11 U.S.C. § 327(a). *Accord, Kuykendahl Place Associates, supra* at 849; *Kendavis Industries, supra* at 751.

This Court's actions are taken after due consideration of the mandates of the Bankruptcy Code. Most assuredly, there is no condemnation of Counsel for what they have done and the representation that they have thus far provided. Accordingly, this Court will not preclude the award of compensation to the Firm which proceeded in its representation in good faith.

IT IS THEREFORE ORDERED that the Application to Employ Attorneys is hereby DENIED.

IT IS FURTHER ORDERED that the Debtor shall, forthwith, obtain substitute counsel in the within Chapter 11 proceeding.