**In re AMERICAN PRINTERS & LITHOGRAPHERS, INC., Debtor.**

**Bankruptcy No. 92 B 20452.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Dec. 22, 1992.

Malcolm M. Gaynor, Richard M. Bendix, Jr., Schwartz Cooper Kolb & Gaynor, Chicago, IL, for debtor.

Richard Friedman, Denyse Heffner, Office of the U.S. Trustee, Chicago, IL.

Stanley M. Herkleman, Goldberg Kohn Bell Black Rosenbloom & Moritz, Ltd., Chicago, IL, for LaSalle Nat. Bank.

· Leonark Malkin, Carolyn E. Winter, Mandel Lipton and Stevenson, Chicago, IL, for the Unsecured Creditors Committee.

## MEMORANDUM OPINION ON DEBTOR'S APPLICATION TO EMPLOY COUNSEL

JACK B. SCHMETTERER, Bankruptcy Judge.

The Debtor American Printers & Lithographers, Inc. has applied to employ Messrs. Malcolm Gaynor and Richard Bendix, Jr. and the firm of Schwartz Cooper Kolb & Gaynor Chartered ("SCK & G") as its attorneys in its Chapter 11 bankruptcy case. The United States Trustee has objected to this application. The applicant made full disclosure of facts set forth below. The Court then heard oral argument and received authorities from SCK & G and the U.S. Trustee. Under the circumstances presented here, the application will be denied.

### Undisputed Factual Background

SCK & G has had a longstanding, continuing attorney-client relationship with LaSalle National Bank ("LaSalle") which results in 10% of its total gross annual firm revenues, amounting to a large sum. However, the firm has never represented LaSalle in any way concerning the bank's relations with Debtor or this bankruptcy proceeding. Prior to its engagement as Debtor's counsel, SCK & G disclosed its continuing relationship with LaSalle to both Debtor and LaSalle, and both parties consented to the engagement.

Debtor filed its petition for relief herein under Chapter 11 of the Bankruptcy Code on September 11, 1992. On its schedules, Debtor lists $2,438,232.32 in unsecured

debt and $7,799,331.13 in secured debt. This includes a $3,795,569.19 debt owed to LaSalle, which is secured by Debtor's accounts receivables, inventory, employee stock ownership plan, machinery, and equipment. Debtor has obtained debtor-in-possession financing from LaSalle that funds Debtor's operations. SCK & G represented Debtor in negotiating that financing by agreement, and obtained approval from the Court. The Agreed Final Financing Order was entered by this Court on November 6, 1992. That and the Preliminary Financing Orders leading up to the Final Order all contain a release by Debtor of any and all claims against LaSalle concerning the extent or priority of its liens. No party has asserted that a legally viable cause of action exists against LaSalle, or that Debtor has grounds for challenging the validity or priority of LaSalle's liens. However, if such a problem should arise, SCK & G conceded in open court that it would not represent Debtor in a suit against LaSalle.

There has been no contention that SCK & G has not acted in Debtor's best interests in this bankruptcy proceeding. However, it is clear from the record that LaSalle's security interest and DIP financing permeate every aspect of this case, and that SCK & G would be severely hurt if LaSalle took its business out of that firm due to any dissatisfaction with SCK & G's conduct in this case.

■ SCK & G has made a full disclosure of the foregoing in compliance with Fed. R.Bankr.P. 2014. Given the importance of this issue to the Court and to the bankruptcy bar, as well as to these attorneys, the Court wanted to consider the issues carefully. Therefore, at a hearing on this application held on October 8, 1992, the Court allowed Debtor to employ SCK & G pending this decision so that work on behalf of Debtor could proceed. Accordingly, although denied approval, SCK & G may seek compensation for its services and disbursements.

## DISCUSSION

Section 327 of the Bankruptcy Code governs employment of professionals by debt-ors-in-possession. It provides, in relevant part,

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

. . . .

(c) In a case under chapter ... 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(a) and (c).

■ Professionals may only be employed to represent a debtor-in-possession if they are disinterested and they do not hold or represent any interest adverse to the estate while they are employed thereby. *In re Tinley Plaza Associates, L.P.,* 142 B.R. 272, 276–77 (Bankr.N.D.Ill.1992); *In re Rusty Jones, Inc.,* 134 B.R. 321; 342 (Bankr.N.D.Ill.1991); *In re Diamond Mortgage Corp. of Illinois,* 135 B.R. 78, 89 (Bankr.N.D.Ill.1990). An adverse interest includes "any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant". *In re Tinley Plaza,* 142 B.R. at 277; *In re Rusty Jones,* 134 B.R. at 342; *In re Al Gelato Continental Desserts, Inc.,* 99 B.R. 404, 407 (Bankr.N.D.Ill. 1989). A "disinterested person" is defined in the Bankruptcy Code as one that "does not have an interest materially adverse to the interest of the estate ... by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ... or for any other reason." 11 U.S.C. § 101(14)(E). Section 327(a) is strictly enforced because of its impact on the integrity of the bankruptcy system. *In re Tinley Plaza,* 142 B.R. at 277. Therefore, an at-

torney for a debtor-in-possession must be "free of the slightest personal interest which might be reflected in their decisions concerning matters of the debtor's estate." *Id.* at 277–78, *quoting In re Kuyendahl Place Associates, Ltd.,* 112 B.R. 847, 850 (Bankr.S.D.Tex.1989).

■ LaSalle holds an interest that is adverse to Debtor within the meaning of § 327(a). SCK & G's long term business interests include maintaining good relations with LaSalle. Should any problem arise between Debtor and LaSalle, these lawyers could not file any litigation that might be warranted. As a result, SCK & G may not simultaneously represent both LaSalle and Debtor in connection with this bankruptcy case. *In re AOV Industries, Inc.,* 797 F.2d 1004, 1011 (D.C.Cir.1986); *In re Georgetown of Kettering, Ltd.,* 750 F.2d 536, 540 & n. 7 (6th Cir.1984); *In re Lee Way Holding Co.,* 100 B.R. 950, 955 (Bankr.S.D.Ohio 1989).

■ The issue presented here is whether a conflict is created by SCK & G's continuing representation of LaSalle in other matters not related to this proceeding. Two cases addressing this precise issue are *In re Amdura Corp.,* 121 B.R. 862 (Bankr. D.Col.1990), and *In re Dynamark, Ltd.,* 137 B.R. 380 (Bankr.S.D.Cal.1991). In *Amdura,* a firm seeking to be employed as debtor's counsel represented the debtor's primary secured lender on an ongoing basis in matters unrelated to debtor. The debtor filed its bankruptcy petition due to its inability to reach an accommodation with that lender. 121 B.R. at 863. At the hearing on application to employ counsel, a partner of the firm stated that debtor would have to employ separate counsel to investigate and prosecute any claims against this lender because the firm would not "bite the hand that feeds" it. *Id.* at 867.

The firm argued that no "actual conflict" under § 327(c) was present in the case that would justify disqualifying counsel. The Court rejected this argument stating that § 327(c)

> ... only applies when counsel has represented a creditor in connection with a debt owed by the debtor and then seeks

to represent the trustee or debtor-in-possession in the case. Such dual representation is permissible where there is no actual conflict; i.e. a trade debt incurred in the ordinary course of business and as to which there is no dispute. Dual representation of interests of that type is clearly not the case here.

*Id.* The court then found that a conflict was present and denied the application.

In *Dynamark,* a law firm represented the debtor's largest secured creditor on an ongoing basis in matters unrelated to debtor. The court conditionally granted the application to employ the firm as counsel for debtor, finding that

> any potential conflict that may exist is too remote to warrant disqualification on these grounds.... if [the firm] becomes aware of any actual conflict during the course of its representation of the debtor, its duty is to immediately disclose that conflict or risk denial of its fees.

137 B.R. at 381.

Several courts have refused to allow attorneys to represent a debtor while simultaneously representing a principal of that debtor in unrelated matters. *See, e.g., In re EWC, Inc.,* 138 B.R. 276 (Bankr. W.D.Okl.1992) (attorney sought to represent a debtor while representing debtor's sole shareholder in a divorce action); *In re TMA Associates, Ltd.,* 129 B.R. 643 (Bankr. D.Col.1991) (attorney sought to represent a debtor while representing debtor's general partners concerning their interests in other business ventures). In each of these cases, the courts concluded that representation of one party would necessarily require the attorneys to compromise their representation of the other. *In re EWC,* 136 B.R. at 284; *In re TMA Associates,* 129 B.R. at 646–47. Therefore, the courts found that the attorneys were disqualified because the compromised party could be the debtor.

In this case, Debtor and LaSalle have conflicting interests. Debtor's counsel must at least vigorously negotiate with LaSalle in order to fulfill its duties to Debtor, even if litigation is not warranted. SCK & G may not be able to do this without jeop-

ardizing its relationship with its large and very important client LaSalle. Therefore, an actual conflict exists, and disqualification of SCK & G is required under the circumstances.

### Actual v. "Potential Conflict"

Section 327(c) provides that an application to employ counsel should be disallowed only when "there is an actual conflict of interest." Based on the use of the term "actual", several courts have recognized a distinction between actual and potential conflicts. *See In re Diamond Mortgage*, 135 B.R. at 91; *In re Vanderbilt Associates, Ltd.*, 117 B.R. 678, 681 (D.Utah 1990); *In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr.D.N.J.1989), *aff'd in part and rev'd in part*, 119 B.R. 35 (D.N.J.1990), *aff'd*, 949 F.2d 1300 (3rd Cir.1991). "Actual" conflict occurs when the professional serves two presently competing and adverse interests. *In re Diamond Mortgage Corp.*, 135 B.R. at 91. "Potential" conflict is said to occur where the competition does not presently exist, but may become active if certain contingencies arise. *In re BH & P, Inc.*, 103 B.R. at 563. *In re Dynamark*, 137 B.R. 380, implicitly recognized this distinction in contingently allowing a firm to represent a debtor while simultaneously representing the debtor's largest secured creditor on unrelated matters.

■ However, several other courts have rejected this distinction. *See In re Amdura Corp.*, 121 B.R. 862, 868 (Bankr.D.Col. 1990); *In re Grabill Corp.*, 113 B.R. 966, 970 (Bankr.N.D.Ill.1990); *In re Kendavis Industries International, Inc.*, 91 B.R. 742, 754 (Bankr.N.D.Tex.1988). The rationale for their position is that, once counsel represents a client with a conflicting interest, then that counsel may not aggressively investigate, let alone prosecute, that client in connection with the debtor's case. Of course, some counsel in that situation may well investigate and even prosecute their own clients vigorously and accept the risk of losing those clients. However, § 327 exists to protect the integrity of the bankruptcy system, *In re Ginco, Inc.*, 105 B.R. 620, 622 (D.Col.1988), and is designed to prevent even the possibility that professionals may compromise their representation of debtors. *See In re Martin*, 817 F.2d 175, 181 (1st Cir.1987) ("Section 327 is intended ... to address the appearance of impropriety as much as its substance, to remove the temptation and opportunity to do less than duty demands"). Therefore, since even a possible future conflicting interest may prevent counsel from fulfilling his duties, these courts find the concept of a "potential conflict" to be a contradiction in terms. *In re Grabill*, 113 B.R. at 970. In other words, if any conflict exists, then these courts would define it as an "actual" rather than "potential" conflict. *In re Kendavis*, 91 B.R. at 754.

■ The approach taken by *Grabill* and *Kendavis* in rejecting the distinction between potential and actual conflicts has a logical consistency not found in the contrary opinions. However, rejecting this distinction would be contrary to the well established rule against the formulation of bright-line *per se* rules of disqualification. *See In re Harold & Williams Development Co.*, 977 F.2d 906, 910 (4th Cir.1992); *In re BH & P Inc.*, 949 F.2d at 1315–16 (and cases cited therein). Therefore, this Court adopts the compromise view espoused by the bankruptcy court and approved by the Third Circuit in *BH & P, Inc.*:

Code § 327(c) does refer, of course, only to actual conflicts. However, it does not follow from the principle that disapproval of employment is mandatory where there is an actual conflict, that there is no discretion to disapprove employment where the conflict is 'potential.' ... the court should generally disapprove employment of a professional with a potential conflict, with certain possible exceptions. First of all, ... there may occasionally be large cases where every competent professional in a particular field is already employed by a creditor or a party in interest....

The other exception is where the possibility that the potential conflict will become actual is remote, and the reasons for employing the professional in ques-

tion are particularly compelling. This court will not attempt here to define the parameters of this exception, which necessarily will depend on the facts of a particular case. I will, however, note that even in such situations, employment of a professional with a potential conflict is disfavored.

103 B.R. at 564. *See also In re BH & P, Inc.*, 949 F.2d at 1316 (quoting this passage with approval).

 Even assuming that SCK & G's continuing representation of LaSalle were viewed as a "potential" and not a present actual conflict, then disqualification is still warranted under the standard given above. First, due to LaSalle's deep involvement in this case and SCK & G's great dependence on LaSalle's present and future law business, the possibility that the conflict will become actual is high and not remote. Second, there is no compelling reason which calls for this Court to set aside the general disfavor of authorities toward employment of professionals with potential conflicts. Third, it has not been shown that the pool of potential counsel available to debtor does not supply available skilled counsel.

By ruling in this manner, a *per se* rule is not relied on. Rather, this ruling is an exercise of discretion not to approve employment of a professional with the relationship demonstrated here. *See id., citing In re Martin*, 817 F.2d at 182 ("bankruptcy courts have been accorded wide discretion in connection with ... the terms and conditions of the employment of professionals").

### The Effect of LaSalle's and Debtor's Waivers

The fact that LaSalle and Debtor have waived this conflict after disclosure is irrelevant. A firm that is not disinterested may not represent a debtor even if that debtor has consented to such representation and waived the conflict. *In re Amdura Corp.*, 121 B.R. at 866; *In re Kuyendahl Place*, 112 B.R. at 851. This principle is applicable here where Debtor's present counsel must necessarily negotiate terms on behalf of Debtor with its other client LaSalle. Such terms affect other creditors in bankruptcy. The consent by the clients does not always create disinterestedness in bankruptcy, and does not do so here.

### CONCLUSION

Accordingly, by order entered separately this date, Debtor's application to employ Schwartz Cooper Kolb & Gaynor Chartered as its bankruptcy counsel is denied. Since the firm was approved for employment pending this ruling, it will be allowed to apply for final fees and expenses. The Debtor will be given reasonable time to obtain new counsel. No party has argued that, in the circumstances, there is any impediment to SCK & G turning over its work product to new counsel.