**Arden Brett BULLOCK, Plaintiff,**

v.

**Scott CARVER, Defendant.**

**No. 92–C–680 B.**

United States District Court, D. Utah, Central Division.

Dec. 18, 1995.

---

Craig S. Cook, Salt Lake City, UT, Dean Gits, Santa Monica, CA, for Petitioner.

Sandra L. Sjogren, Deputy Weber Co. Attorney, Ogden, UT, for Respondent.

BOYCE, United States Magistrate Judge.

Arden B. Bullock, petitioner, is an inmate confined at the Utah State Prison (USP). The defendant was convicted of three counts of aggravated sexual abuse of a child and three counts of sodomy on a child in the District Court of Davis County, Utah. The defendant was sentenced to a minimum mandatory fifteen years imprisonment. The plaintiff's conviction was affirmed by the Utah Supreme Court. *State v. Bullock*, 791 P.2d 155 (Utah 1989). Certiorari was denied by the United States Supreme Court on June 28, 1990. The petitioner has filed a petition, in this court, for habeas corpus under 28 U.S.C. § 2254.

The original petition alleged his conviction was invalid because of the ineffectiveness of Bullock's counsel, Mr. Stephen McCaughey, Esq., a denial of due process, and denial of confrontation under the Sixth Amendment. At his state trial, petitioner was also represented by Christine Soltis, Esq. Ms. Soltis was, at the time, in private practice, but has since become a member of the Utah Attorney General's staff. The Utah Attorney General represents the State of Utah in post conviction cases and was initially counsel for the respondent Warden in this case. Currently the Warden is represented by a former assistant attorney general who is now a Deputy Weber County Attorney. In the original petition for habeas corpus, the petitioner made no claim as to ineffective representation by Ms. Soltis. The court entered an order in this case, to allow limited interview and testimony from Ms. Soltis relevant to petitioner's claims. Soltis is not counsel in this case, but is in the division of the Attorney General's office which handles postconviction matters. She had supervisory authority over counsel who originally appeared for respondent in this case. Based on an informal ethics opinion of the Utah State Bar, counsel for respondent who made an appearance and were from the Attorney General's office, moved to withdraw and to allow Sandra L. Sjogren, an Assistant Attorney General from a different division, to appear for respondent. The Utah State Bar opinion had concluded that other members of the Utah Attorney General's office need not be disqualified (Letter attached to File Entry # 60). The court granted the substitution of counsel (File Entry # 63).

On October 27, 1994, the petitioner moved to disqualify the Utah Attorney General's office and its staff from representing the respondent warden. The petition asserted the motion was based on a conflict of interest because Division Chief Christine Soltis, who was petitioner's former defense attorney, will be a witness in the case (File Entry # 66). In a memorandum (File Entry # 69), petitioner refers to the fact that Ms. Soltis represented Bullock along with Mr. Stephen McCaughey and that she is now the Division Chief for criminal appeals for the Utah Attorney General's office. Petitioner stated there are 14 divisions in the Utah Attorney General's office and 13 division chiefs. There are approximately 150 attorneys in the office (File Entry # 69, p. 3). Ms. Soltis had refused to discuss her representation of petitioner with his attorneys or with anyone in the Utah Attorney General's office (Id. p. 4). She has however been allowed to testify as a witness by order of this court on July 19, 1994. Subsequently, Ms. Soltis agreed to speak to both sides of this case. It is claimed by petitioner that Ms. Soltis took an active part in the strategic defense decisions in petitioner's case in state court. Petitioner alleges that his claim of ineffectiveness will also be advanced against Ms. Soltis.

The current counsel for respondent is Sandra Sjogren, who at the time of hearing on this motion, was assigned to the child abuse and Criminal Enforcement Division of the Attorney General's Office. She is now a Weber County Attorney. Counsel for petitioner, in his memorandum (File Entry # 69, pp. 7–8), describes some activities of Ms. Sjogren and some functions of her division but nothing in the statements is in any way relevant to this motion. Petitioner still argues for the disqualification of Ms. Sjogren.

The petitioner asserts that ethical standards require disqualification of Christine Soltis and attorneys supervised by her. However, this is no longer an issue since Soltis does not supervise Sandra Sjogren and Ms. Soltis has never been counsel in this case. Persons supervised by her have been removed from the case. It is also contended ethical rules require disqualification of all attorneys in the Utah Attorney General's office and that was urged as to Ms. Sjogren. Petitioner contends that confidentiality of matters not related to competency of counsel could be jeopardized. These are not identified nor does petitioner shed any light on why or how this would occur. The petitioner after hearing has not been able to establish such a claim. There is no showing of disclosure of any matter of a confidential nature not relevant to this case. Petitioner also contends an "emotional state" of respondent's counsel warrants disqualification. However, nothing of this nature has been identified or how that would apply to Ms. Sjogren and petitioner has presented no evidence which would support such a conclusion. The argument is speculative and problematical at best. The petitioner's attempt to extrapolate that argument to an attorney who would defend Ms. Soltis' conduct in the matter to any attorney in another division or now a separate office is wholly conclusory. Finally, petitioner argues the fact that Soltis will be a witness requires disqualification of the entire Utah Attorney General's office and Ms. Sjogren.

Subsequently, on October 27, 1994 Bullock moved to amend his petition for habeas corpus to include a claim of ineffectiveness of counsel against Christine Soltis. The court granted the request (File Entry # 71).[1]

The Utah Attorney General's office filed a reply memorandum to the petitioner's motion (File Entry # 75). An amended petition was filed by petitioner (File Entry # 80). Thereafter, petitioner sought to add new evidence (File Entry # 81) being an affidavit by petitioner's attorney Dean R. Gits. Respondent also asks that the court consider the affidavit of Ms. Sjogren, current counsel for respondent. Both motions are hereby granted.

Two hearings were held on the petitioner's motion for disqualification of respondent's counsel. At the first hearing the petitioner Arden Bullock testified (Tr. p. 7). He engaged Mr. Stephen McCaughey to represent

---

1. No challenge by respondent has been made to the claim based on the petitioner's failure to exhaust state remedies on this issue. 28 U.S.C. § 2254(b) & (c). Ms. Soltis' conduct has never been presented to the Utah Courts.

him when Bullock was first under suspicion of criminal conduct. After a conversation with a social worker there was a suggestion made to McCaughey that a woman attorney should be brought into the case. Eventually Ms. Soltis was employed by McCaughey. Bullock paid McCaughey who in turn compensated Soltis. Soltis was a member of the petitioner's defense team (Tr. pp. 8–9). Bullock only met separately and alone with Soltis once, at all other meetings, McCaughey was present. Most of the discussion came from McCaughey. Soltis was present with McCaughey on four or five occasions. The discussions would involve facts not strategy (Tr. p. 10). McCaughey was the primary counsel. Soltis was to interview the children and cross-examine the expert witnesses at trial (Tr. pp. 10–11). At trial, McCaughey examined one expert and Soltis another. During trial, there were conversations between Bullock and both counsel together (Tr. p. 18). Bullock never met with Ms. Soltis alone during the trial, except for one ten minute session when there was just a general discussion of the trial (Tr. pp. 12–13).

At one point during the trial Bullock had a heated discussion with McCaughey because Bullock believed certain questions should have been asked of Dr. Snow, a prosecution witness. Bullock gave a note to McCaughey with some questions but McCaughey never asked the witness the questions submitted by Bullock (Tr. p. 13). Bullock attempted to talk to Soltis after the Utah Supreme Court's decision on appeal in the case and at a time when Soltis was then with the Utah Attorney General's office. Bullock had other counsel. Soltis would not discuss the case with Bullock (Tr. p. 14). McCaughey made the strategic decisions as to Bullock's defense (Tr. pp. 14–15).

Bullock's current counsel, Craig Cook, Esq., represented petitioner on Bullock's appeal before the Utah Supreme Court. He had no contact with McCaughey or Soltis during the appeal except at one point where McCaughey advised that he saw nothing wrong in the case (Tr. p. 16). Cook had no contact with Soltis until after the instant petition for habeas corpus was made (Tr. p. 17). Cook was advised by Kris Leonard, an attorney in the Utah Attorney General's office who was involved with this petition, that Soltis would not talk to Ms. Leonard. In July, 1994 the court entered an order allowing Ms. Soltis to give limited testimony and at that time Cook was apprised that Soltis was the Division Chief over Leonard (Tr. p. 18). Thereafter, Cook interviewed Soltis. Cook contends Soltis made some of the decisions at trial that petitioner is now complaining about (Tr. p. 19). As a result, Cook obtained the ethics opinion from the Utah State Bar by which the disqualification of Ms. Leonard and another assistant Attorney General was achieved, but the opinion concluded that the Utah Attorney General's office itself was not disqualified to act in this case (Tr. p. 19).

Assistant Utah Attorney General Robert Parrish was the division chief over the Child Abuse Advocacy Division. His division made an extensive investigation into satanic abuse of children. Parrish apparently made a comment during a television news interview that the petitioner's case may have involved satanic abuse, however, no evidence of that nature was offered at Bullock's trial (Tr. p. 20). The television station ran a statement that no evidence of satanic abuse existed in Bullock's case. The petitioner's trial was in December, 1986. Robert Parrish was Ms. Sjogren's supervisor at the time of the first hearing on petitioner's disqualification motion in this case. Ms. Sjogren was at that time employed with the Utah Attorney General's office.

Ms. Sjogren, at the first hearing, made a proffer to the court. Ms. Sjogren stated she had no communication with Soltis about the petitioner's case before being assigned to the case, except Soltis did state at one time that she had represented Bullock. Sjogren was already aware of that fact (Tr. p. 22). Soltis had made the Utah Attorney General's office aware of her prior representation of Bullock before Soltis went to work for the office (Tr. p. 23). After Sjogren took over this case and after the petition had been amended to include a claim of ineffectiveness against Soltis, Sjogren had a conversation with Soltis, however, strategic information about the representation of Bullock was not discussed (Tr. p.

23). As of the first hearing no other conversations have been had pending this court's ruling on the motion for disqualification. Sjogren was in the same division as Parrish and he was the Division chief. That is the Children's Justice Division. Sjogren had worked with and had a professional association with Parrish for several years. The division is separate from the division over which Soltis is in charge. Soltis did not exercise day to day control or supervision over Sjogren while she was in the Attorney General's office (Tr. p. 27). Soltis' division is criminal appeals but presently also handles post conviction cases. Sjogren said the unit to which she was assigned did not investigate satanic child abuse but the whole area of ritualistic child abuse which is much broader (Tr. p. 28). There is no relationship between that activity and Soltis' division (Tr. p. 29). Soltis had also refused to talk to law professor Leonel Frankel who assisted Cook on the appeal of Bullock's case.

A second hearing was held at which time Stephen McCaughey testified. He was lead counsel for Bullock and associated Christine Soltis as cocounsel (Tr. p. 37). It was McCaughey's idea to associate Soltis as cocounsel (Tr. p. 38). This was discussed with Bullock along with the role Soltis would have in the case. There were numerous occasions, six or seven, where McCaughey, Soltis and Bullock met and conversed. Strategy was discussed including the role of Soltis in examining expert witnesses (Tr. pp. 38–40). Bullock participated and was in on the trial strategy and Soltis, at one point, made an explanation as to why there was no evidence that supported a defense theory that Bullock had suggested (Tr. p. 41). Soltis was an equal cocounsel in the defense of Bullock. There were many memoranda back and forth between the two attorneys. Subsequent to the petitioner's conviction, McCaughey had conversations about Bullock's claims against McCaughey and Soltis. Nothing about the opposition strategy of the Utah Attorney General's office was mentioned. Kris Leonard, from the Attorney General's office, had a conversation with McCaughey and informed him he would be a witness (Tr. p. 44). The conversation of McCaughey with Soltis was about what records she had and the strategy

of the case. It was an effort at reconstruction of what had been done (Tr. p. 45). McCaughey met with Soltis, Kris Leonard and Janice Frost from the Utah Attorney General's office between July and September, 1994 (Id.). The meeting was for preparation for this petition hearing. McCaughey believed there was no longer any attorney/client relationship with Bullock or existing confidences in light of Bullock's claim in his petition (Tr. p. 47). During the interview with Leonard and Frost no confidential matter was disclosed (Tr. p. 48).

Christine Soltis testified she was employed by the Utah Attorney General office starting June 10, 1989 (Tr. p. 51). Prior to that time Soltis assisted McCaughey in the representation of petitioner. On being hired by the Attorney General's office, Soltis contacted the Utah State Bar as to its recommendation as to any conflict of interest. Based on the Bar's recommendation Soltis gave the Attorney General's office a letter clearly identifying the cases in which she could not participate. Bullock's case was listed. Soltis specifically requested she be screened out of any conflicting cases. Soltis became a division chief in 1993. She had not participated in the post conviction petition of Bullock (Tr. pp. 52–53). She made it clear to everyone in the Attorney General's office that there would be no discussion of the petition in her presence (Tr. p. 54). She had refused to discuss the matter. A memorandum was posted within the Attorney General's office that the case was not to be discussed with Soltis and attorneys were not to approach her (Tr. p. 55). She had nothing further to do with the case until she was subpoenaed (Tr. p. 56).

Soltis also contacted the Utah State Bar when the instant petition was filed and obtained advice. Later she again contacted the Bar and had several discussions and was advised that since she had been attacked she could defend herself (Tr. p. 57). The Bar also suggested a court order authorizing her to discuss the case be obtained and this court issued an order authorizing Soltis to discuss the petition (Tr. p. 58). Soltis then had a conversation with Leonard and Frost. No confidential information was disclosed before

then. Soltis also discussed the case with Bullock's current counsel, Craig Cook (Tr. p. 53). She had no relationship with Sandra Sjogren. When Soltis was hired at the Attorney General's office, Sjogren was Soltis' supervisor for a time. She had had no day to day working relationship with Parrish (Tr. p. 61). According to Soltis there are 170 attorneys in the Attorney General's office (Tr. p. 61), three hundred employees and eleven or twelve divisions. Each division has a division chief and the office is divided into two sections supervised by a Deputy Attorney General. Soltis and Sjogren were not, at the time of the hearing, in the same section. Soltis was under the Utah Solicitor General (Tr. p. 62).

Soltis viewed her relationship to McCaughey as a second chair position (Tr. pp. 62–63). Soltis was to work with the defense witnesses, correlate matters and report to McCaughey. Bullock was involved in a number of strategy discussions. Soltis had five or six private discussions with Bullock and participated in juvenile court proceedings (Tr. pp. 64–65). McCaughey was head counsel but Soltis felt free to give her opinion. Soltis was present during all of the trial and examined four expert witnesses, both defense and prosecution (Tr. p. 66).

Attorney Robert Parrish was not involved with criminal appeals when Sjogren was the supervisor of criminal appeals and Soltis an assistant in the division. Soltis has never worked with Parrish (Tr. p. 68).

Soltis never spoke to Bullock's appellate attorneys during the time his case was going through the appellate process. She refused to talk to Bullock when he was represented by other counsel (Tr. pp. 69–70). She spoke to Bullock's current counsel, Craig Cook, after this court's order allowing her to speak on the instant petition and did so under the same conditions as she spoke to other counsel. Sjogren had been Soltis' "section" chief when she first started at the Attorney General's office. Soltis was under Sjogren for about two years (Tr. p. 72). However, Sjogren didn't review Soltis' work.

At one point, Mr. Dave Bryant handled this case when the first petition for habeas relief was filed by Bullock. Soltis never spoke to Bryant about the matter[2] (Tr. p. 74). Originally Soltis' subordinates, Kris Leonard and Janice Frost, took over the case and then withdrew when the Utah State Bar ethics opinion advised they should. Soltis was not named in Bullock's original petition as being ineffective counsel (Tr. pp. 75–78). After the informal ethics opinion of the Utah State Bar, the case was moved to a different division of the Attorney General's office.

The Utah Attorney General's office has a meeting of division chiefs about once a month or about nine times a year. Parrish tends not to attend these meetings. Soltis had no social contacts with Parrish. Soltis does not expect to have any contact with Sjogren or Parrish in preparation for hearing in this case, except to speak about the allegations in the petition (Tr. p. 81). Soltis did not believe Sjogren was in any different position because of representing the respondent and defending the conduct of Soltis[3] (Tr. p. 84). She believed she would be called by both sides. Given the present framework of the case, Soltis' interests are against Bullock's petition and somewhat more allied to those of the respondent.

Robert Parrish, division chief of the Children's Justice Division of the Utah Attorney General's office, said he had only one conversation with Soltis during the time petitioner's case was in the State courts (Tr. p. 89). The conversation went to the length of Utah Supreme Court Justice Stewart's opinion, which was a dissent from Bullock's conviction. No confidential information was discussed. Parrish did appear on a television program and the Bullock case was mentioned. No information was obtained from Soltis or McCaughey (Tr. p. 91). He had no supervision over Ms. Soltis (Tr. p. 92). There may have been some consultation between Soltis and Parrish on other matters when Soltis was in the appeals division and Parrish headed the child abuse assistance unit. Parrish

---

2. Bryant was killed and the case was transferred to another Assistant Attorney General.

3. Soltis is not being represented by the Attorney General's office, Sjogren or anyone else in this case. Sjogren represents the respondent.

has nothing to do with this case. Parrish would not have a role in deciding to confess any error of ineffectiveness in this case (Tr. p. 94). Parrish saw no conflict in Sjogren acting as counsel in this case. Parrish also disputed a news report's version of comments attributed to Parrish on the alleged offenses of Bullock. However, the court finds this aspect of petitioner's evidence of little probative worth and generally collateral to the issue of Sandra Sjogren's representation of the respondent in the instant matter.

Kris Cameron Leonard, an Assistant Attorney General for Utah, had one conversation with Ms. Soltis and McCaughey focusing on the allegations in the petition of Bullock as to McCaughey's defense of Bullock. This was after this court's order authorizing the conversation (Tr. p. 102). There is no specific policy in the Utah Attorney General's office as to the establishment of "Chinese Walls" in conflict cases, although an office handbook requires the reporting of any conflict before proceeding on a case (Tr. p. 107). A so called "Chinese Wall" has been used in other cases in the Utah Attorney General's office.

On March 1, 1995, Sandra Sjogren left the Utah Attorney General's office. As of May 5, 1995 her compensation was exclusively from Weber County (File Entry # 83). She will continue to handle this case but her supervisor is an attorney on the staff of the Weber County Attorney's office in Ogden, Utah. Sjogren is no longer under the supervision of anyone in the Utah Attorney General's office.

The evidence presented shows that Ms. Soltis has conducted herself in this matter with upmost sensitivity to her former role as cocounsel for petitioner. She has consulted with the Utah State Bar on several occasions in order to receive direction as to her ethical responsibilities. She has been particularly sensitive to her potential conflicts and sought to remove herself from these conflicts from the time of entering the Utah Attorney General's office up to the present time. She has refused to discuss her representation of Bullock or any confidences and only spoke to Bullock's counsel and respondent's counsel about this case after this court entered its

order authorizing her to discuss the case. The petitioner has waived any lawyer/client privilege by his petition as to anything relevant to the claim of ineffectiveness of his counsel. *Laughner v. United States,* 373 F.2d 326, 327 (5th Cir.1967) (petitioner's claim of ineffectiveness of counsel waived any attorney/client privilege); *Tasby v. United States,* 504 F.2d 332, 336 (8th Cir.1974) (same); *Randall v. United States,* 314 F.2d 800 (10th Cir.1963). See also *Hunt v. Blackburn,* 128 U.S. 464, 9 S.Ct. 125, 32 L.Ed. 488 (1888). Ms. Soltis has disqualified herself from any involvement as an advocate in this case and will only be involved as a witness on the subject of her and Mr. McCaughey's alleged ineffectiveness. There is no direct conflict involving Ms. Soltis' participation in this case.

In this case, Sandra Sjogren, a deputy Weber County attorney, is to represent the respondent, Warden of the Utah State Prison at Draper, where Bullock is confined. No one from the Utah Attorney General's office will appear as counsel, although at the time Bullock filed his motion for disqualification, Sjogren was an attorney in Utah Attorney General's office. She was, at the time this action was originated, in a different division of the office than Soltis and was not supervising or being supervised by Soltis or anyone with a direct interest in the case. Sjogren at one time, several years before, had been a section chief over Soltis but had no direct supervision or review of Soltis' work. There is no evidence to show Sjogren's defense of respondent would be influenced or effected by Soltis' position. Sjogren's efforts, of course, would be to contend that Soltis and McCaughey were not ineffective in their representation of Bullock in the State prosecution of him. There is no evidence the representation of respondent by Sjogren will prejudice petitioner in any way.

This court has adopted the "Utah Rules of Professional Conduct, as revised and amended and as interpreted by" the court. D. Utah Rule 103–1(h). The Rules of Professional Conduct in their Preamble provide that the Rules "are rules of reason. They should be interpreted with reference to the purposes of legal representation and of the

law itself." Rule 1.6 of the Utah Rules of Professional Conduct treats the "Confidentiality of Information." There has been no breach of that rule by Ms. Soltis, Ms. Sjogren or any other attorney involved in this case. Rule 1.6(b) now allows confidential information to be revealed for the purpose defending against the claim of ineffectiveness made by Bullock against McCaughey and Soltis. There is no violation of Rule 1.7 pertaining to conflicts of interest in Sjogren's representation of the respondent in this case. Ms. Soltis is representing no one in this matter. She will be a witness.

Rule 1.10 of the Rules of Professional conduct provides for imputed disqualification of a law firm. Rule 1.10(b) provides:

When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially factually related matter in which that lawyer, or a firm with which the lawyer has associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

▊ That provision of the Rule could disqualify the Utah Attorney General's office if it were considered a "firm" subject to the Rule.[4] However, the ethics opinion of the Utah State Bar given to petitioner's counsel did not conclude that all of the attorneys in the office of the Utah Attorney General were disqualified because Soltis became a member of the office after representing Bullock. Although, that opinion is not binding on this court, it is entitled to consideration, e.g. *In re Vanderbilt Associates, Ltd.*, 117 B.R. 678 (D.Utah 1990). The size of the Attorney General's Office, its special categorization of functions and structure, its non-economic motivations and public interest, serve to support

the conclusion reached by the Utah State Bar. The term "firm" is not one that envisions a public prosecution office.[5] The comment to the Utah Rules of Professional Conduct 1–10 notes:

If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another. . . .

The circumstances and evidence in this case establish no breach of confidentiality. The scope of Rule 1.10 does not comfortably fit in the context of a public prosecution office and appears to be couched in rubric related to private law firms. The facts of particular situations involving a claim of disqualification must be individually considered. *SLC Ltd. v. Bradford Group West, Inc.*, 999 F.2d 464, 468 (10th Cir.1993). In this case, Sjogren and Soltis are not now positioned such that one has any supervision or control over the other. Sjogren is no longer in the Utah Attorney General's office. When Sjogren was in that office, after this petition had been filed, she was in a different division from Soltis and had no contact or communication with Soltis or Sjogren's supervisor about the Bullock case. The facts do not show any basis for disqualification under the Utah Rules of Professional Conduct or any national standard of ethical conduct *Cole v. Ruidoso Mun. Schools*, supra. There has been no violation of Rule 3.8 of the Utah Rules of Professional Conduct relating to the special responsibilities of a prosecutor.

In this case, Sjogren is not acting as a prosecutor of Bullock. She is defending the respondent Warden. Bullock has been convicted and has the burden of proof to establish that his conviction should be set aside *Sumner v. Mata*, 449 U.S. 539, 551, 101 S.Ct. 764, 771, 66 L.Ed.2d 722 (1981); *Strozier v.*

---

**4.** See *Blair v. Armontrout*, 626 F.Supp. 512 (D.W.D.Mo.1985) (disqualification of Missouri Attorney General's ordered, office under different ethical rules); *United States v. Catalanotto*, 468 F.Supp. 503 (D.Ariz.1978). However, in *Humphrey on Behalf of State v. McLaren*, 402 N.W.2d 535, 543 (Minn.1987) the court held a governmental legal office was not a "firm" and imputed disqualification was not required of all members of a governmental office. The court states this to

be the majority rule. This is the position taken by the Utah State Bar. The standard for determining a disqualification motion is a matter of federal law. *Cole v. Ruidoso Mun. Schools*, 43 F.3d 1373 (10th Cir.1994).

**5.** The ABA Model Rules of Professional Conduct appear to have been drafted using wording akin with the traditional private law firm in mind.

*Newsome,* 926 F.2d 1100, 1104 (11th Cir. 1991). Although habeas corpus is a unique process, the remedy is civil. *Teague v. Lane,* 489 U.S. 288, 308, 109 S.Ct. 1060, 1074, 103 L.Ed.2d 334 (1989); *Beeler v. Crouse,* 332 F.2d 783 (10th Cir.1964); *Miles v. Dorsey,* 61 F.3d 1459, 1472 (10th Cir.1995); Liebman and Hertz, *Federal Habeas Corpus Practice and Procedure,* § 2.2. Some courts have noted inmates who have been convicted are presumed guilty. *Rudd v. Jones,* 879 F.Supp. 621 (D.S.D.Miss.1995) citing *Herrera v. Collins,* 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993); *Ross v. Moffitt* 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974). In any event, the circumstances in this matter are not the same as an original criminal prosecution. Certainly, it is not required that the counsel for respondent be disinterested in the petitioner's guilt. *United States v. Terry,* 806 F.Supp. 490, 496 (D.S.D.N.Y. 1992). In *United States v. Kember,* 685 F.2d 451, 458 (D.C.Cir.1982) the court said the basis for disqualification of a United States Attorney's office would "have to be very strong." In *United States v. Heldt,* 668 F.2d 1238 (D.C.Cir.1981) the court said not all assistants in a prosecutor's office need be disqualified in a prosecution where some attorney in the office may have a conflict.

In *United States v. Troutman,* 814 F.2d 1428 (10th Cir.1987) the Tenth Circuit refused to find a disqualification required because of the New Mexico Attorney General's office participation in assisting in a federal extortion Hobbs Act prosecution of a New Mexico investment officer who alleged that the New Mexico Attorney General had provided previous legal representation to the investment officer. The court found no "inherent conflict of interest." It also seemed to reject an appearance of impropriety contention. The court said that to impose a more restrictive standard would work an "undue burden" on counsel.

In *Dick v. Scroggy,* 882 F.2d 192 (6th Cir.1989) the court refused to find a basis for disqualification of a prosecutor who represented the victim of the defendant's crime even if the representation was undertaken before the determination of the defendant's prosecution.

These cases present more aggravated circumstances than anything in this case, especially where Sandra Sjogren is not a presently a member of the Utah Attorney General's office and when she was, she received no confidential information or had contact with Ms. Soltis about the case. Further, Ms. Soltis did not disclose any confidential information and petitioner has waived confidences or any attorney/client privilege by his petition relevant to a claim of ineffectiveness of counsel.

In *United States v. Bolton,* 905 F.2d 319 (10th Cir.1990) the court held the trial court did not abuse its discretion in refusing to disqualify an assistant prosecutor for the Government despite the appearance of impropriety of previously having represented the defendant where no sensitive information had been obtained in the earlier representation. The court said the decision to disqualify was in the discretion of the court. *Id.* p. 321; *E.E.O.C. v. Orson H. Gygi Co.,* 749 F.2d 620, 621 (10th Cir.1984); *Smith v. Whatcott,* 757 F.2d 1098 (10th Cir.1985); *United States v. Davis,* 932 F.2d 752, 763 (9th Cir.1991). In this case, Sjogren had no prior relationship with defendant and is no longer with the Attorney General's office and there have been no shared confidences with petitioner's former counsel.

■ The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except when necessary. *Matter of Grand Jury Subpoena of Rochon,* 873 F.2d 170, 176 (7th Cir.1989); *United States v. Goot,* 894 F.2d 231 (7th Cir.1990) (disqualification of United States Attorney's office not required when defendant's attorney appointed new United States attorney. Chinese Walls adequately protected against conflicts); *United States v. Stout,* 723 F.Supp. 297, 312 (D.E.D.Pa.1989) (voluntary recusal by assistant United States Attorney because of former law firm's representation did not require disqualification of the office); *Waters v. Kemp,* 845 F.2d 260 (11th Cir.1988) (no disqualification required in habeas action).

In *SLC LTD. v. Bradford,* supra and *Graham v. Wyeth Laboratories,* 906 F.2d 1419 (10th Cir.1990) the Tenth Circuit ruled on a

disqualification of counsel issue and indicated that the automatic inflexible disqualification approach adopted in *Smith v. Whatcott*, supra, was no longer applicable. A "functional analysis" approach should be used.[6] Applying a functional analysis to the situation in this case, it is apparent there is no prejudice to petitioner and no reason of a functional nature exists that requires disqualification of Ms. Sjogren as counsel for respondent. Therefore,

**IT IS HEREBY ORDERED** that the petitioner's motion to disqualify the Utah Attorney General's office from participating as counsel for respondent is denied as moot, the motion to the extent it seeks disqualification of Sandra J. Sjogren as counsel for respondent is denied.

---

**6.** The four factors analysis identified in these cases are not directly applicable to this case because *Soltis* is not going to participate other than a witness and Sjogren is not a member of the Utah Attorney General's office. Also, there is no longer any confidential or attorney/client privilege interest in communications with Soltis.

Rule 3.7 *Utah Rules of Professional Conduct* allows counsel to participate as an advocate where another lawyer in the lawyer's firm is called as a witness under proper circumstances. In this case, Sjogren isn't in Soltis' "firm" and there is otherwise no indication of a violation of Rules 1.7 or 1.9.